UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA LYNN SCOTT,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>Defendant. | No. 2:17-cv-1463-EFB<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties have filed cross-motions for summary judgment. ECF Nos. 11, 12. For the reasons discussed below, plaintiff's motion for summary judgment is denied and the Commissioner's motion is granted.

I. BACKGROUND

Plaintiff filed applications for a period of disability, DIB, and SSI, alleging that she had been disabled since January 1, 2011. Administrative Record ("AR") 190-205. Her applications were denied initially and upon reconsideration. *Id.* at 88-96, 98-107. On November 3, 2015, a

/////

1

hearing was held before administrative law judge ("ALJ") Christopher Knowdell.[1] *Id.* at 33-55. Plaintiff was represented by counsel at the hearing, at which she and a vocational expert testified. *Id.*

On November 20, 2015, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[2] *Id.* at 11-17. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

---

[1] A hearing was initially held on May 7, 2015, but the hearing was continued to allow plaintiff to submit additional medical records. AR 23-32.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2. The claimant has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following medically determinable impairments: Degenerative Disc Disease of lumbar and cervical spine (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

\* \* \*

5. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2011, through the date of this decision (20 CFR 404.1520(c) and 416.920(c)).

*Id.* at 13-17.

Plaintiff's request for Appeals Council review was denied on May 12, 2017, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational

3

interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. ANALYSIS

Plaintiff argues that the ALJ erred in finding that she does not have any severe impairments. ECF No. 11.

A. Relevant Legal Standards

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were not taken into account. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At step-two the claimant has the burden of providing medical evidence of signs, symptoms, and laboratory findings that show that his or her impairments are severe and are expected to last for a continuous period of twelve months. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir.2005); *see also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p).

When the ALJ determines that a claimant has at least one severe impairment, he must consider all impairments, including non-severe impairments, at all subsequent steps of the sequential evaluation. *Smolen*, 80 F.3d at 1290; *see also Burch v. Barnhart*, 400 F.3d 676, 682-82 (9th Cir. 2005) (ALJ's failure to find claimant's obesity severe at step two was harmless error where it was considered in determining claimant's RFC).

B. Background

Plaintiff alleged that she was unable to work due to back and neck problems. AR 228.

/////

/////

4

She testified that her most severe impairment was neck pain, which she treats by rubbing and stretching her neck and taking ibuprofen. *Id*. at 42-43. She also testified that she wears wrist braces, which were prescribed by her physician. *Id*. at 45-46.

With respect to medical evidence, plaintiff reported back pain with numbness and tingling down her right leg in October 2011. AR 335. She had mild tenderness in her back and a normal gait. *Id*. In March 2012, she reported neck pain (*id*. at 339), and in August 2012 she complained that for years she had experienced lower back pain that radiated down her right leg (*id*. at 344). On exam, she had some pain with back movements, but her reflexes and gait were normal, strength and cerebellum function were intact. *Id*. In April 2013, plaintiff was seen for medication refills. *Id*. at 324. She reported a broken tooth was causing her pain, but no neck or back pain was noted. *Id*. at 324. X-rays from August 2013 showed degenerative disc disease and slight retrolisthesis of the lumbar spine, as well as early degenerative disc disease and slight subluxations of the cervical spine. *Id*. at 302-03. The following month, plaintiff claimed that her neck and back pain had not improved. *Id*. at 311. Tenderness in the neck and lumbar spine was noted, but she had normal strength, reflexes, and sensation, and no cerebellum signs. *Id*. at 312.

In November 2013, state agency non-examining physician Dr. L. DeSouza reviewed plaintiff's medical records and opined that she did not have a severe impairment. *Id*. at 59-60. The following month, plaintiff was seen for an orthopedic consultation, which was conducted by Dr. Ravi Ramachandran. *Id*. at 404-05. Plaintiff reported neck pain with burning going down her right arm and into her hand. *Id*. at 404. She also complained of back pain that ran down her right leg to her calf. *Id*. On examination, plaintiff had weakness of the right bicep, but otherwise normal strength, and had a positive Hoffman's sign on the right side. *Id*. at 404-05. Dr. Ramachandran concluded that plaintiff might have early cervical myelopathy based on the positive Hoffman's sign and symptoms of radiculopathy. *Id*. at 405. An MRI was ordered and plaintiff was prescribed physical therapy. *Id*.

In February 2014, state agency non-examining physician Dr. B. Sheehy reviewed plaintiff's medical records in relation to her request for reconsideration and affirmed Dr. DeSouza's opinion that plaintiff did not have a severe impairment. *Id*. at 74-75. Plaintiff was

next seen for complaints of neck pain in June 2014. *Id*. at 397-400. Treatment notes reflect that plaintiff had tenderness in the cervical spine, with numbness and tingling sensations in both arms. *Id*. at 398. Plaintiff was prescribed Tramadol and a muscle relaxer, and referred for an orthopedic consultation. *Id*. at 398-99. The following month, plaintiff was treated at the emergency room for complaints of neck pain that had worsened over the prior month. *Id*. at 367. On examination, she had mild pain upon movement of her neck, with full range of motion (no meningeal signs) and no vertebral tenderness. *Id*. at 368. Inspection of her back was normal, with no tenderness or pain on range of motion. *Id*. A CT scan showed multilevel degenerative disease without evidence of neural compression. *Id*. at 368-69. Plaintiff was diagnosed with neck pain, prescribed Norco and Valium—which controlled plaintiff's pain—and discharged the same day. *Id*. at 369.

Plaintiff was next seen in January of 2015 for medication refills and to "check up on back problems." *Id*. at 394-96.[3] Plaintiff stated that she wanted to see Dr. Ramachandran for her back issues, but that he was no longer taking her insurance. *Id*. at 394. Her primary care provider discontinued Tramadol and the muscle relaxer, and prescribed Tylenol. *Id*. at 395-96. Treatment records from March 2015 reflect a diagnosis of arthritis and carpel tunnel syndrome "per patient" and a prescription for wrist braces. *Id*. at 391-93. Plaintiff was seen in August 2015 for anxiety, arthritis, and skin spots. *Id*. at 407. Examination of plaintiff's neck was normal, but there was some tenderness in the lumbar site. *Id*. at 408. She was prescribed Ibuprofen and a muscle relaxer. *Id*. at 409.

C. Discussion

Plaintiff argues that the ALJ erred in concluding that she did not have a severe impairment. Plaintiff does not specifically argue that the evidence of record establishes the existence of a severe impairment. Instead, plaintiff argues that the ALJ should have obtained more evidence. Plaintiff contends that the ALJ should have taken the positive Hoffman's sign

---

[3] In her motion, plaintiff claims that she received further treatment for neck pain in July 2014, after being discharged from the emergency room. ECF No. 11 at 5. However, the records cited by plaintiff are from June 2014, before her visit to the emergency room. *See* AR 397-400.

6

noted by Dr. Ramachandran "as an indicator of a severe cervical impairment" and "ordered a consultative examination to provide the forensic data upon which to base an informed decision." ECF No. 11 at 7. This is so, according to plaintiff, because a positive Hoffman sign is used to diagnose spinal cord compression. *Id.* at 6.

Essentially, plaintiff is arguing that the ALJ had a duty to further develop the record in light Dr. Ramachandran's findings. The duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). "A specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

Here, the evidence is not ambiguous, nor is the record inadequate to allow for proper evaluation of plaintiff's claim of disability. Plaintiff is correct in her contention that a positive Hoffman's sign may be indicative of spinal cord compression. *See* Merck & Co., *The Merck Manual of Diagnosis and Therapy* ("Merck Manual"), 379 (18th ed. 2006) ("To test for Hoffman's sign, clinicians tap the nail or flick the volar surface of the 3rd finger; if the distal phalanx of the thumb flexes, the test is positive, usually indicating corticospinal tract dysfunction caused by stenosis of the cervical cord. Sensory findings are subjective and may be unreliable"). However, other evidence in the record reflects that plaintiff did not have cervical cord compression. As observed by the ALJ, a CT scan of the cervical spine taken after Dr. Ramachandran's examination showed no neural compression. *Id.* at 15; 368-69. Thus, there is no merit to plaintiff's contention that a consultative examination was needed to "provide the forensic data upon which to base an informed decision." *See* ECF No. 11 at 7. Such data is already in the record.

Furthermore, the ALJ's step-two finding is supported by Dr. De Souza and Dr. Sheehy's opinions that plaintiff did not have a severe impairment. These opinions are consistent with the

minimal objective medical findings and constitute substantial evidence supporting the ALJ's determination. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) ("[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings."); *see also* SSR 96-6p ("State agency medical and psychological consultants are highly qualified physicians and psychologist who are experts in the evaluation of the medical issues in disability claims."); 20 C.F.R. § 416.927(e) (findings by state agency physicians constitute proper evidence from non-examining sources); 20 C.F.R. § 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

Accordingly, plaintiff has failed to demonstrate any error by the ALJ in assessing the severity of her impairments.

IV. CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor and close the case.

DATED: September 19, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE